[No. 6198.]

## CHAS. MAXWELL *v.* THE BOARD OF SUPERVISORS OF STANISLAUS COUNTY.*

<table>
<tr><td>53</td><td>389</td></tr>
<tr><td>80</td><td>366</td></tr>
<tr><td>53</td><td>389</td></tr>
<tr><td>87</td><td>175</td></tr>
<tr><td>53</td><td>389</td></tr>
<tr><td>118</td><td>393</td></tr>
<tr><td>53</td><td>389</td></tr>
<tr><td>144</td><td>509</td></tr>
</table>

CERTIORARI UPON THE APPLICATION OF A TAX PAYER.—A citizen and tax payer of a county may apply for *certiorari*, to annul an order or resolution of the Board of Supervisors, made in excess of the jurisdiction of the Board when exercising judicial functions.

COUNTY PRINTING—POWER OF BOARD OF SUPERVISORS TO CONTRACT.—The Board of Supervisors of a county has no power to contract for any of the county printing, without the ten days' public notice that such contract will be let to the lowest bidder which is required by sec. 4047 of the Political Code.

APPEAL from the District Court of the Fifth Judicial District, Stanislaus County.

---

* Rehearing granted as to the point whether the Board of Supervisors was exercising a judicial function in making the order sought to be annulled.

The facts are stated in the opinion.

*Hewell & Turner, Coldwell & Minor,* and *L. Quint,* for Appellant.

The petitioner is not a party *beneficially* interested within the meaning of sec. 1069, Code of Civil Procedure. (*Linden* v. *Board of Supervisors of Alameda County,* 45 Cal. 7; *McCoy* v. *Briant, ante,* p. 247; *Com.* v. *Rossiter,* 2 Binn. 362; *Heffner* v. *Com.* 28 Penn. S. R. 108; *Com.* v. *Canal Co.* 2 Penn. 578; *State* v. *Com. School Fund,* 4 Kan. 261; High. on Ex. Rem. sec. 33; *Colden* v. *Botts,* 12 Wend. 234; *Ex parte Mayor of Albany,* 23 Wend. 277; *Wildy* v. *Washburn,* 16 Johns. 49.)

The contract was for " publishing and advertising," and not for county printing. By the term " county printing," as used in the Code, is meant the printing of the various tax receipts, Assessor's schedules, warrants, licenses, blanks for the various salaried officers and Courts, as well as such other mechanical -work as is ordinarily done by the printer for county governments, and not by the publisher. It embraces all printing work which is not connected with the general dissemination of information. Here the interest of the tax payer is best subserved by having the work done for as small a price as possible; and it is immaterial to him where the work is done, whether in San Francisco, Sacramento, or, indeed, in the Eastern States; hence the Legislature, recognizing that fact, has prescribed a mode by which competition for doing the county printing, from the whole State—nay, from any State—is invited, the object being to get the blanks, etc., printed for the very lowest amount. What cares the tax payer where the blank criminal subpœna, for instance, is printed, whether in California or New York, so long as it is furnished at the lowest market rate? And this object is secured by ordering the contract to be made only after public notice, and must be made to the lowest bidder.

Secs. 4046, 3764, 1055, and 4144, Political Code, require the publishing of certain statements, reports, etc., to be made in a newspaper published in the county, if there be one; and subd. 3, sec. 4003, and subd. 26, sec. 4046, vest in the Board the power

to carry out the provisions of the law as, in their judgment, will best subserve the interests of the tax payers of the county.

*Terry & McKinne,* and *W. L. Dudley,* for Respondent.

The petitioner was the proper party. He is a citizen and a tax payer affected by the illegal tax. (*People ex rel. San Francisco* v. *County Judge, etc.,* 40 Cal. 479; Code of Civil Procedure, sec. 1069.)

2. The contract made by the Board of Supervisors with Spencer was made without authority of law. (Political Code, sec. 4047.)

By the Court, McKINSTRY, J.:

This was a proceeding in the District Court of the Fifth Judicial District, in and for the County of Stanislaus, by writ of *certiorari,* to review the action of the Board of Supervisors in making and entering into a contract for and on behalf of the County of Stanislaus, with one J. D. Spencer, to do certain County printing for Stanislaus County. On the 9th day of February, 1878, the Board of Supervisors, while in regular session, passed the following resolution:

"*Resolved,* That this Board, by, for, and on behalf of said County, do enter into an agreement with the said Spencer, * * that for the period of three years * * after this date all proceedings of this Board, the reports, statements, and advertisements of the officers of this County, for which the County is liable, be published in the *Stanislaus County Weekly News,* at the following rate, [the rates here follow] the same to be paid for quarterly, out of the general fund of said County not otherwise appropriated."

Said Board, also at the same time, made and entered of record the following resolutions:

"*Resolved,* That no bills for publishing or advertising be allowed by this Board, contrary to the above resolution.

"That the District Attorney be requested to draw an agreement in conformity with the above resolution, and that the same be signed by the Chairman of this Board and in behalf of the Board."

Under and by virtue of these resolutions the contract was made, of which the petitioner complains, a copy of which is attached to the petition.

The petition shows that said contract was made by said Board *without advertising or giving any notice whatever* that *said Board would entertain or receive sealed proposals or bids to contract for the County printing of Stanislaus County.* And furthermore, that it was made without giving *any notice*, public or otherwise, that the contract for such printing would be let by the County through its Board of Supervisors, to the *lowest* bidder, or would be let at all.

When the case was called for hearing, on the return of the writ, the Board, by its counsel, moved to quash said writ, and also demurred to the petition. The motion was denied, the demurrer overruled. Whereupon judgment was entered vacating and annulling the orders and contract set up in the petition. The appeal is from the judgment.

The petitioner is a citizen and tax payer of the County. The first point of the appellant is, that the petitioner is not authorized to apply for the writ, because not "*beneficially interested*" within the meaning of sec. 1069 of the Code of Civil Procedure.

*Linden* v. *Board of Supervisors*, 45 Cal. 7, was *mandamus* —the claim being that a public duty had been imposed on the defendants by reason of a certain petition signed and presented by a large number of persons, but it did not appear that any pecuniary interest of the plaintiff was involved. *McCoy* v. *Briant*, (also cited by appellant) was a bill for an injunction, and it was held that the tax payer could never be injured by certain bonds issued by the city authorities of San Diego, inasmuch as the bonds were absolutely void in the hands of any and every holder. Neither of these cases is exactly in point.

The other cases called to our attention by appellant, (*Commonwealth* v. *Rossiter*, 2 Binn. 262; *Heffner* v. *Commonwealth*, 28 Pa. 108, and *State* v. *School Fund*, 4 Kan. 261) were applications for writs of *mandamus*. In such cases a command is sought compelling a defendant to affirmative action, and it has always been held that a relator or applicant must have a right which is specific, complete, and legal, and for which he has no

other specific and equally adequate remedy.   The neglect of a public officer to discharge a public duty may affect the interest of every tax payer, but such result must in ordinary cases be uncertain and dependent upon contingencies.   When, however, a public board or officer has exceeded the limited powers conferred by law, and the direct consequence of such excessive use of authority must be to add to the burden of local taxation, it clearly appears that, unless the act *ultra vires* be annulled, each tax payer must suffer injury, common in character, but special in amount or degree.

It would seem that one thus directly affected should be entitled to a remedy, and our conclusion is that petitioner was authorized to commence this proceeding.

The second point made by appellant is: " Petitioner alleging the orders, resolution, and contract to be *void*, was bound by the allegation, and neither himself nor any one else could be injured."

Under our practice, (Code of Civil Procedure, 1068) the writ can *only* issue when there is an excess of jurisdiction.

We shall assume, as was assumed by counsel at the argument, that in providing for the publication and printing of the matters mentioned in the resolution and contract, the Board was exercising *judicial functions.*

The main question presented is: " Had the Board power to pass the order or resolution, and to make the contract referred to ? "

Among the enumerated powers of the Supervisors are: " To contract for the County printing, and provide books and stationery for the County officers."   " At the adjournment of each session of the Board, to cause to be published in a newspaper, *or otherwise,* a fair statement of all their proceedings, and semi-annually a statement of the financial condition of the County." (Political Code, sec. 4046, subds. 21, 22.)

Sec. 3764 of the same Code requires the Tax Collector to *publish* a " delinquent list," and provides, " the expense of the publication to be a charge against the County."   Sec. 1055 makes it the duty of the Supervisors to cause a copy of each " Election Proclamation " to be published in some " newspaper,

(if any) *printed* in the County." By sec. 3654 the Clerk of the Board is required to give notice of the time the Supervisors will meet to equalize taxes—" by publication in a newspaper, if any is printed in the County." The Tax Collector's notice that taxes will be delinquent at a certain date must, in every case, be published in some newspaper published in the County, if there be one. (Sec. 3749.) Notice of sale must be printed in a newspaper, if any. (Sec. 3766. See, also, secs. 3792, 3882-3.)

If any of the matters referred to are, as they may be, published by *printing*, and the County is liable, as it is, for the expense of the printing, such printing is *County printing*.

Sec. 4047, as the same was prior to the amendments of 1878, read: "All contracts for—1. *County printing;* 2. Books and stationery; and, 3. Supplies for County institutions, must be made with the lowest bidder, and after ten days' notice that the contract will be let. The bidding must be by sealed proposals."

It would be giving a forced construction to the language employed, to say that it was intended that a portion only of the printing for which the County would be obliged to pay should be advertised. But as if to remove any possible impression of that character, (if any such existed) the amended section (4047) provides that contracts for "ALL *County printing*" must be made with the lowest bidder.

The resolution passed and contract made with the *Stanislaus County Weekly News*, in the absence of the ten days' public notice for bids, are *void*.

It will be understood that there is nothing in the foregoing which holds it to be the absolute duty of the County authorities to contract for printing with the lowest bidder, in case of fraudulent collusion between the bidders, or other fraud.

Judgment affirmed.